UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Ft. Pierce Division

Case Number: 10-14172-CIV-MARTINEZ-LYNCH

WILLIAM WHITTAKER,

    Plaintiff,

vs.

ST. LUCIE COUNTY SCHOOL BOARD,

    Defendant.
_____/

### ORDER ON MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss **(D.E. No. 5)**.[1] Plaintiff filed the above-captioned action in this case asserting three claims. Count I asserts a claim for violation of § 504 of the Rehabilitation Act, Count II asserts a claim for "Color of State Law" violation under 42 U.S.C. § 1983,[2] and Count III asserts a claim for unlawful retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203. For the reasons stated in this Order, the motion is granted in part and denied in part.

---

[1] Defendant raised certain grounds for dismissal, such as Plaintiff's failure to make out a prima facie case of discrimination under § 504 of the Rehabilitation Act, for the first time in its reply brief. The Court will not consider matters raised for the first time in the reply. If appropriate, however, Defendant may raise those issues again in a motion for summary judgment.

[2] Although not labeled as a First Amendment claim, this claim appears to pertain to Plaintiff's First Amendment rights.

## I. Factual Background[3]

Defendant St. Lucie County School Board ("Defendant" or "the Board") operates the public schools in St. Lucie County, Florida, including WestGate K-8 School ("Westgate"). Complaint ¶ 9. Defendant receives federal funds subject to § 504 of the Rehabilitation Act and the ADA. Complaint ¶ 8. Defendant employed Plaintiff William Whittaker ("Plaintiff" or "Whittaker") as the school counselor at Westgate from September 9, 2010 through September 24, 2010, when he was terminated. Complaint ¶ 11.

As part of his job duties, Plaintiff familiarized himself with Defendant's policies and practices with regard to exceptional student education ("ESE") students and students in the process of being evaluated for those services. Complaint ¶ 13. Plaintiff discovered that ESE files were not managed properly and students were not being timely evaluated for disabilities as required by the relevant statutes. Complaint ¶ 14. Plaintiff also discovered that Defendant was implementing a response to intervention ("RTI") system that was not equipped to provide the required educational services and accommodations and that Defendant was failing to comply with the "Child Find" requirement to identify students with disabilities pursuant to federal and state law. Complaint ¶ 15.

Plaintiff expressed concerns about Defendant's legal compliance in providing ESE services to Westgate's school psychologist, Shelly Welby, and to Westgate's principal, Robert Cramner. Complaint ¶ 16. Then, on September 18, 2010, Plaintiff was involved in an RTI training program at the Board's district offices where he raised questions about the lack of compliance with federal and state laws regarding the ESE and RTI services provided to eligible

---

[3] Facts in this section are derived solely from the Complaint and not from the parties' briefs. Because this is before the Court on a motion to dismiss, the facts from the Complaint are accepted as true for the purposes of this analysis.

students and students being evaluated for eligibility.  Complaint ¶ 17.  At one point, a person the Complaint does not identify responded, "welcome to St. Lucie county."  Complaint ¶ 17.

Plaintiff asserts that he reported incidents and situations in which disabled students were subjected to discrimination by not being provided free and appropriate education that was equivalent to that of non-disabled students; inadequate facilities or services; improper employee conduct in evaluating students suspected of having disabilities; and "other violations of laws." Complaint ¶ 30.  He asserts he reported these deficiencies to his supervisors and discussed them with his co-workers.  Complaint ¶ 30.

On September 21, 2010, Principal Cramner called Plaintiff to his office to discuss a "confidential complaint" lodged against Plaintiff.[4]  Complaint ¶ 18.  The complaint stated that Defendant's staff would not tolerate Plaintiff's continued employment after he complained about the lack of compliance with providing ESE, RTI, and other necessary accommodations and services to students with disabilities.  Complaint ¶ 18.  Plaintiff requested a meeting with the union representative and Principal Cramner to discuss the complaint.  Complaint ¶ 18.  On September 23, 2010, Plaintiff met with Principal Cramner and a "Ms. Galic."  Complaint ¶ 19.  During this meeting, Plaintiff requested that the complaint be retracted or that the confidential source be identified.  Complaint ¶ 19.  He did not receive a formal response.  Complaint ¶ 19.

On September 24, 2010, Plaintiff met with Principal Cramner and Vice Principals Cassie Elliston and Maria Noya.  Complaint ¶ 20.  Principal Cramner stated that the Defendant Board made the decision that Plaintiff was unable to work successfully with Defendant's RTI team due to his allegedly abusive and unprofessional conduct during the September 18, 2010 RTI training

---

[4] The Complaint states that Plaintiff believed a union representative lodged the confidential complaint against him.  Complaint ¶ 18.  The Complaint does not specify whether anyone, such as Principal Cramner, told Plaintiff this.

-3-

meeting. Complaint ¶ 20. Plaintiff asserts that Defendant's report that he promoted an adversarial or hostile relationship with other employees was false. Complaint ¶ 41. Defendant had decided to terminate Plaintiff. Complaint ¶ 20. Plaintiff asserts that the motivation for this decision was to retaliate against him for his complaints. Complaint ¶ 40. Plaintiff made a request to Principal Cramner that Defendant accept a post-dated letter of resignation, and this request was accepted. Complaint ¶ 22. After the meeting, Vice Principal Noya told Plaintiff that as a new employee he should have watched what he said and not asked so many questions regarding Defendant's noncompliance. Complaint ¶ 21.

Plaintiff asserts that Defendant has a history of failing to provide a free and appropriate education to disabled students in a nondiscriminatory manner. Complaint ¶ 44. Plaintiff further asserts that Defendant has a custom, pattern, or practice of attempting to coerce, discourage or prevent employees from disclosing information on discrimination against disabled students. Complaint ¶ 44. Plaintiff seeks declaratory, injunctive, compensatory, and punitive damages, as well as pre- and post-judgment interest, fees, and costs.

## II. Analysis

**A.    Count I Standing**

Count I of Plaintiff's complaint is brought under Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 701–797.[5] Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his

---

[5] Plaintiff has also listed "42 U.S.C. § 1983" under his Count I heading. "[A] plaintiff may not maintain a section 1983 action in lieu of—or in addition to—a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the employee's rights created by the Rehabilitation Act." *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1531 (11th Cir. 1997). Accordingly, Plaintiff may not proceed under both the Rehabilitation Act and § 1983 in Count I. Plaintiff may, however, bring a § 1983 claim for the deprivation of a Constitutional right in Count II.

disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).  It also provides that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) . . . shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title." 29 U.S.C. § 794a(a)(2).  Although Title VI contains no explicit anti-retaliation provision, the Eleventh Circuit construes Title VI and Title IX *in pari materia*, *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1170 n. 12 (11th Cir. 2003), and the Supreme Court has held that there is an implied cause of action for retaliation under Title IX. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005).  Moreover, Courts of Appeal in other circuits have explicitly recognized Title VI retaliation claims, *see*, *e.g.*, *Peters v. Jenney*, 327 F.3d 307, 317 (4th Cir. 2003) (discussing and recognizing Title VI retaliation claim), and the applicable regulations implementing Title VI lay out a retaliation claim, *see* 34 C.F.R. § 100.7(e).  Accordingly, an anti-retaliation claim is among the "remedies, procedures, and rights set forth in title VI" that are available under the Rehabilitation Act to "any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance." 29 U.S.C. § 794a(a)(2).

   Defendant argues that Count I should be dismissed because Plaintiff is not a "person aggrieved by any act or failure to act" by Defendant under 29 U.S.C. § 794.  Defendant approaches this argument from a number of legal angles—namely, the terms of the Rehabilitation Act itself, Article III standing considerations, and principles of judicial restraint—but Defendant's basic argument is that Plaintiff cannot sue for retaliation under the Rehabilitation

Act because Plaintiff himself was not subjected to discrimination on the basis of a disability.[6]

As discussed above, the Rehabilitation Act permits any "person aggrieved" by the act of a covered defendant to bring a retaliation claim pursuant to the rights and remedies of Title VI. Therefore, in order to determine whether Plaintiff has standing to bring a retaliation claim under the Rehabilitation Act, the Court must determine whether he is a "person aggrieved" by a violation of the Act. In the Title VIII context, the Supreme Court has defined a "person aggrieved" as reaching as far as Article III permits. *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209 (1972); *Bennett v. Spear*, 520 U.S. 154, 165-66 (1997); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 109 (1979). Several courts have applied this defintion of "person aggrieved" to actions brought under the Rehabilitation Act. *See Innovative Health Systems, Inc. v. City of White Plains*, 931 F. Supp. 222, 237 (S.D.N.Y. 1996); *Nodleman v. Aero Mexico*, 528 F.Supp. 475, 485 (D.C.Cal. 1981) ("The use of the phrase 'any person aggrieved' in Section 505(a)(2) evinces a congressional intention to define standing to bring a private action under Section 504 as broadly as is permitted by Article III of the Constitution.").

In a more recent case, *Thompson v. North American Stainless, LP*, 131 S.Ct. 863 (2011), however, the Supreme Court declined to apply *Trafficante*'s broad definition of "person aggrieved" to the Title VII context but stated that there was "a common usage of the term 'person aggrieved' that avoids the extremity of equating it with Article III and yet is fully consistent with our application of the term in *Trafficante*." *Thompson*, 131 S.Ct. at 870. Drawing from cases construing the "person aggrieved" language in the Administrative Procedures Act ("APA"), the Supreme Court "held that this language establishes a regime under which a plaintiff may not sue

---

[6] Plaintiff is also not representing the interests of a particular disabled student, and he is not an advocacy group representing the interests of disabled students as a whole.

unless he 'falls within the "zone of interests" sought to be protected by the statutory provision whose violation forms the legal basis for his complaint.'" *Id*. (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883 (1990)).  A "zone of interests" test denies a right of review "if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Securities Industry Assn*., 479 U.S. 388, 399–400 (1987).  Applying this APA test to the Title VII context, the Supreme Court concluded that the "aggrieved person" terminology "enabl[ed] suit by any plaintiff with an interest arguably sought to be protected by the statutes, . . . while excluding plaintiffs who might technically be injured in an Article III sense but whose interests are unrelated to the statutory prohibitions in Title VII." *Thompson*, 131 S.Ct. at 879 (internal citations and quotations omitted).

Whether the Court applies the broad "person aggrieved" definition from *Trafficante* or the somewhat narrower definition from *Thomas*, the result is that the Plaintiff is a "person aggrieved" with standing to bring this action.  Because Article III standing is necessary for subject matter jurisdiction, the Court will consider *Trafficante*'s analysis, which only requires a "person aggrieved" to have Article III standing, first.

Plaintiff has Article III standing.  "The 'irreducible constitutional minimum' of standing under Article III consists of three elements: an actual or imminent injury, causation, and redressability." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida*, 641 F.3d 1259, 1265 (11th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiff's complaint clearly lays out that he has met these requirements.  He was terminated, he alleges Defendant did so in retaliation for his efforts on behalf of disabled students, and his injury

is redressable.[7]

Plaintiff is also a "person aggrieved" pursuant to the test laid out in *Thompson*. As a school counselor responsible in part for the education of disabled students, Plaintiff's interests in this case are neither marginally related to nor inconsistent with the purposes of the Rehabilitation Act. On the contrary, his interests are arguably sought to be protected by the statute, which means he falls within the "zone of interest" necessary in order to be a "person aggrieved." *See Thompson*, 131 S.Ct. at 879.

Defendant also asserts that Plaintiff has not met the prudential requirements for standing. The prudential limits on standing require that:

> (1) the plaintiff must assert [his] own rights and interests and may not rely on the rights and interests of others; (2) the federal courts will not adjudicate "abstract questions of wide public significance" amounting to "generalized grievances," which are more appropriately resolved by the legislative branches; and (3) the plaintiff's complaint must fall within the "zone of interests" to be protected by the statute in question."

*Johnson v. Ocwen Loan Servicing*, 374 Fed. Appx. 868, 873 (11th Cir. 2010) (quoting *Valley Forge Christian Coll. v. Americans United*, 454 U.S. 464, 475 (1982). In this case, Plaintiff has asserted his own right with respect to retaliation, and this case does not present an abstract question of public significance or generalized grievance. As discussed above, Plaintiff also falls within the "zone of interests" protected by the statute. Therefore, Plaintiff meets the prudential requirements for standing.

---

[7] The Court notes that Article III standing is not a rigorous standard to meet. Indeed, as the Supreme Court pointed out in *Thompson*, under Article III standing requirements alone "a shareholder would be able to sue a company [under Title VII] for firing a valuable employee for racially discriminatory reasons, so long as he could show that the value of his stock decreased as a consequence." *Thompson*, 131 S.Ct. at 869.

Finally, the Court notes that the Supreme Court has consistently interpreted federal retaliation statutes to extend causes of action to individuals who oppose discrimination against the statutes' protected group even when those individuals are not part of the protected group themselves. *See*, *e.g.*, *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005) (holding that Title IX "does not require that the victim of the retaliation must also be the victim of the discrimination that is the subject of the original complaint" and permitting a man to make a claim for Title IX retaliation); *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969) (holding that a white man could sue for retaliation under 42 U.S.C. § 1982 when he spoke out against discrimination against his black tenant). Defendant has not been able to cite any cases analyzing a Rehabilitation Act or Title VI retaliation claim which have barred a plaintiff's claim because the plaintiff was not a victim of the complained-of discrimination. Accordingly, the Court concludes that a non-disabled individual may assert a cause of action for retaliation under § 504 of the Rehabilitation Act.

**B.  Count II**

  1. Policy or Custom

"Local government bodies, such as school boards, may be held liable under § 1983 only for acts 'of the municipality—that is, acts which the municipality has officially sanctioned or ordered.'" *K.M. v. School Board of Lee County Fla.*, 150 Fed. Appx. 953, 957 (11th Cir. 2005) (quoting *Pembaur v. Cincinnatti*, 475 U.S. 469 (1986)). "State law determines which bodies or persons may establish municipal policy. Under Florida law, final policymaking authority for a school district is vested in the School Board." *Id*. (citing *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989) and Fla. Stat. Ann. § 1001.41). The Defendant School Board therefore establishes municipal policy.

"[A] plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a

municipal 'policy' or 'custom' that caused the plaintiff's injury." *Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397 (1997).  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality.  A custom is a practice that is so settled and permanent that it takes on the force of law."  *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (internal citations omitted).  "Even in the absence of an express policy or custom, a local government body can be held liable 'for a single act or decision of a municipal official with final policymaking authority in the area of the act or decision.'"  *Cuesta v. School Bd. of Miami-Dade County, Fla.*, 285 F.3d 962, 968 (11th Cir. 2002) (quoting *McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996)); *accord Williams v. City of Valdosta*, 689 F.2d 964, 969 (11th Cir. 1982). "Because Florida law identifies the School Board as the policymaker for the School District, a single decision by the Board may constitute School Board policy, even if not phrased as a formal policy statement."  *K.M. v. School Board of Lee County Fla.*, 150 Fed. Appx. at 957.

  Plaintiff's bare assertion that Defendant has a custom, pattern, or practice of attempting to coerce, discourage or prevent employees from disclosing information on discrimination against disabled students, Complaint ¶ 44, is a conclusory allegation.  This kind of conclusory allegation, without more, is insufficient to state a claim for municipal liability under § 1983.  *See Hall v. Smith*, 170 Fed. Appx. 105, 108 (11th Cir. 2006) (affirming dismissal of a plaintiff's § 1983 claim when his only assertion regarding a municipal custom or policy was conclusory and did not provide factual support).  Plaintiff has, however, alleged that the 'School District" and the Defendant School Board itself made the decision to terminate him, Complaint ¶ 20, on retaliatory grounds, Complaint ¶¶ 40, 41, and that the Defendant School Board ratified the retaliatory

conduct of its employees, Complaint ¶ 42.[8]  Construing these allegations in the light most favorable to Plaintiff, they are sufficient to show that the decision to fire Plaintiff constituted a policy of the municipality.

    2. Protected Speech

Defendant also asserts that Count II should be dismissed because Plaintiff did not engage in speech protected under the First Amendment.  "The law is clearly established that a public employer may not retaliate against an employee for an employee's exercise of constitutionally protected speech."  *Cook v. Gwinnett County School Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005).  "Of course, a public employee does not have an absolute right to freedom of speech and the 'State's interest as an employer in regulating the speech of its employees differ[s] significantly from those it possesses in connection with regulation of the speech of the citizenry in general.'"  *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 140 (2005)).  In order to be protected, the speech must involve a matter of public concern.  *Cook*, 414 F.3d at 1318.  "A public employee's speech involves a matter of public concern if it can 'be fairly considered as relating to any matter of

---

[8] Under a "ratification" theory, a "municipality, by actively endorsing or approving of the conduct of its employees or officials, may be held responsible for it."  *Garvie v. City of Ft. Walton Beach, Fla.*, 366 F.3d 1186, 1189 (11th Cir. 2004) (citing *Bannum, Inc. v. City of Ft. Lauderdale*, 901 F.2d 989, 998 (11th Cir.1990) ("[R]atification by the authorized policymakers of a subordinate's reasoning and decision is chargeable to the municipality because their decision is final." (internal quotations omitted)).  "For plaintiffs to state a successful § 1983 claim against a municipality based on a ratification theory, however, 'they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis.'" *Garvie*, 366 F.3d at 1189 (quoting *Thomas v. Roberts*, 261 F.3d 1160, 1175 n. 12 (11th Cir. 2001), *vacated on other grounds by*, 536 U.S. 953 (2002), *reinstated by* 323 F.3d 950 (11th Cir. 2003)).  In this case, even if Plaintiff had not alleged that the Defendant School Board itself made the decision to fire him, Plaintiff has alleged that several days and several meeting occurred between his protected speech and his termination and he has alleged that some of this speech was captured on video tape.  For the purposes of a motion to dismiss, those are sufficient facts to show that the Defendant School Board knew of the firing and the basis for the firing before it occurred and permitted it to go forward, thus ratifying it.

political, social, or other concern to the community.'" *Id*. at 1319 (quoting *Connick*, 461 U.S. at 146). "The mere fact that . . . speech was made to coworkers or to supervisors rather than directed at the general public does not remove the speech from the category of public concern." *Cook*, 414 F.3d at 1319. Plaintiff has alleged that his speech involved the proper classification and education of school children and that it involved accusations that the school was not complying with the law. Accepting those allegations as true, Plaintiff's speech was protected under the First Amendment.

C.     **Count III Statutorily Protected Expression**

Defendant asserts that Plaintiff has failed to state a claim for ADA retaliation, because Plaintiff has failed to allege he opposed a practice made unlawful by the ADA. The ADA's anti-retaliation provision provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a). "It is well established in this circuit that to successfully allege a prima facie retaliation claim under . . . the ADA, a plaintiff must show that (1) [he] engaged in statutorily protected expression; (2) [he] suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). Defendant asserts that Plaintiff has failed to allege that he meets the first prong of this test.

"To establish that a plaintiff engaged in statutorily protected expression, . . . a plaintiff must show that [he] 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Weeks*, 291 F.3d at 1311 (quoting *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). This burden has a subjective and an objective component. *Id*. at 1312. In order to demonstrate the objective component, a Plaintiff must show "that his belief was *objectively* reasonable in light of the facts and record

presented." *Id*. (emphasis in original).

Nowhere in Plaintiff's complaint does Plaintiff ever allege that he believed that Defendant was violating the ADA. He stated that Defendant's practices violated various unspecified state and federal laws, but he did not allege that students were suffering from discrimination based on disabilities or that they were being denied access to any particular educational service. He never asserted he had a subjective or objective belief that one of the laws Defendant violated was the ADA, and he certainly did not explain the way or manner in which he believed that the ADA was violated. Without those allegations, the Defendant does not have notice of the factual grounds on which this claim rests, and Plaintiff has not alleged facts giving rise to an ADA retaliation claim. Accordingly, it is

**ORDERED and ADJUDGED** that

1. Defendant's Motion to Dismiss **(D.E. No. 5)** is GRANTED IN PART and DENIED IN PART. Specifically, it is GRANTED with respect to the § 1983 portion of Count I and as to Count III. It is DENIED in all other respects.

2. Plaintiff may filed an amended complaint correcting the deficiencies noted in this Order on or before August 19, 2011.

DONE AND ORDERED in Chambers at Miami, Florida, August 5, 2011.

                                                                                    _____
                                                                                    JOSE E. MARTINEZ
                                                                                    UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Lynch
All Counsel of Record